IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID COLLINS,<br>　　　Plaintiff,<br><br>　　　v.<br><br>ALLSTATE INSURANCE COMPANY,<br>　　　Defendant. | CIVIL ACTION<br><br>NO. 2:09-cv-01824-WY |

**Memorandum**

YOHN, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　December 10, 2009

　　　Plaintiff, David Collins, sued defendant, Allstate Insurance Company, for breach of an insurance contract (Count I) and for bad faith (Count II) based on Allstate's refusal to cover all of the alleged damages that a storm caused to plaintiff's house (the "Property"). Allstate has moved for partial summary judgment, seeking judgment on the portion of Count I related to the replacement of the entire roof of the Property and judgment as to the whole of Count II. Plaintiff argues that genuine issues of material fact exist as to both counts because Allstate allegedly: (1) treated coverage of the interior of the Property differently from the exterior; and (2) provides coverage to other insureds for similar damage claims. I agree that there are genuine issues of material fact as to Count I and will deny summary judgment. Plaintiff also claims that summary judgment is premature because his attorneys have not had the opportunity to depose representatives of Allstate. I find that, as to Count II alone, plaintiff has demonstrated a sufficient need for such depositions pursuant to Fed. R. Civ. P. 56(f), even though plaintiff did not explain why he did not pursue these depositions in a timely manner. I will therefore deny Allstate's motion without prejudice to Allstate's right to renew the motion as to Count II after the parties have completed discovery.

## I. Factual and Procedural Background

The facts of the instant case, which I view in the light most favorable to plaintiff, the non-moving party, are as follows.

Plaintiff alleges that on March 8, 2008, wind and rain from a storm caused sudden and accidental direct physical loss to the Property in the following areas: (1) the slate roof of the Property; (2) the exterior left side; (3) the interior third-floor attic, hall, stairs, and right-side room; (4) the interior second-floor closet, stairwell, rear bedroom, and right-side middle bedroom; and (5) the interior main-floor foyer. (Def.'s Statement of Undisputed Facts ("Def.'s Stmnt. of Facts") ¶ 8.) Plaintiff alleges that Allstate is liable for all of the alleged damages based on a homeowner's insurance policy plaintiff purchased from Allstate (the "Policy"). (Compl. ¶ 5.) The Policy requires Allstate, in the event of a covered loss, to "repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time" or to reimburse the insured for the repair costs of "equivalent construction for similar use" up to the applicable limit of liability. (Answer Ex. A.)

After plaintiff notified Allstate of the loss, Allstate assigned Pilot Catastrophe Services, Inc., and one of Pilot's adjusters, Patricia Lynn Camp, to investigate plaintiff's claim. (Def.'s Stmnt. of Facts ¶ 11.) On May 16, 2008, based on Camp's inspection of the home, Allstate prepared an initial estimate of damages to the exterior and interior of the house, calculating gross repair costs to be $13,265.42 for restoration of: (1) the damaged sections of the roof, but not replacement of the roof in its entirety; (2) the third-floor hallway, stairwell, den/storage room, and attic; (3) the second-floor closet, hallway, and middle and rear bedrooms; and (4) the main-floor foyer. (Id. ¶ 13.) Based on this estimate, and after applying the $500.00 deductible and $2,202.52 in depreciation, Allstate issued a check for $10,562.90 to plaintiff. (Id. ¶ 14.)

Allstate also hired Doug Weiss of Rainmasters, Inc., to inspect the Property. (Id. ¶ 17.) On December 2, 2008, Weiss reported the following observations:

(1) "The slate shingles on this home are old";
(2) "There have been previous repairs to the slate roofing";
(3) There was a "recent repair to the front upper left corner of the roof. It appear[ed] two or three new slates were installed";
(4) There was "no other damage which could be considered wind damage";
(5) "There [were] some cracked slates and chipped slates throughout the roof. This [was] the result of ice and snow over an extended period of time."

(Id. ¶ 18.) Weiss concluded as follows:

Slate roofing which is in this aged condition needs annual maintenance to repair winter damage. Not all cracked and chipped slates necessarily need to be replaced. If they do not allow water to infiltrate the home, they are not normally replaced.

(Id. ¶ 19.)

Although Allstate did not cover the replacement of the entire roof, it covered the replacement of entire sections of other portions of the Property. For instance, Allstate covered the painting of the entirety of the ceilings in the second-floor middle bedroom and hallway and main-floor foyer, even though only a portion of these ceilings was damaged and even though certain portions were suffering from "old" damages. (Pl.'s Counterstatement of Undisputed Facts ("Pl.'s Stmnt. of Facts") ¶¶ 36-42, 48-51.) In fact, Allstate's estimate of damages included notations stating that painting of undamaged sections was necessary to "match" the damaged portions so that, for example, all the paint in a room would be "one color." (Id. ¶ 43.) In addition, Allstate covered the refinishing of entire sections of the floors of the Property to ensure uniformity. (Id.) Allstate also agreed to replace all the wallpaper in the third-floor hallway, stairwell, and den/storage area even though the storm did not cause damage to all of the wallpaper. (Id. ¶¶ 44-47.)

Plaintiff hired a public adjusting company named Alliance Adjustment Group to handle his claim. (Id. ¶ 60.) James Wagner, president of Alliance, estimated that it would cost $53,225.56 to restore the Property, including $22,000 to replace the entire roof. (Id. ¶ 61.) According to Wagner, the entire roof needed to be replaced, rather than merely the damaged portions, because "there are no slate tiles currently available on the market that are sufficiently similar in color, size and texture, to those on the Collins home at the time of the loss so as to make them of 'like kind and quality' or 'equivalent construction' as required under the terms and conditions of the policy." (Wagner Aff. ¶ 12.) Wagner states that the repair method that Allstate selected as an alternative to replacing the entire roof would have resulted "in a disruption of the uniform and continuous exterior décor of the home." (Id. ¶ 13.) Wagner further states that repairing only the damaged portion of the roof "would result in a different appearance on the roof than the one that . . . existed prior to the time of the loss and would not place the Collins' back into the position they were in prior to the time of the loss." (Id. ¶ 14.) Wagner also states that in his past experience handling hundreds of damage claims involving Allstate that "Allstate has agreed to pay to match continuous decorations." (Id. ¶ 15-16.) Wagner further states that it is the "custom and standard" of the insurance industry "to pay for areas that are not damaged, but of continuous and uniform color, pattern, texture and material." (Id. ¶ 17.)

Plaintiff filed this case on February 27, 2009, in the Philadelphia County Court of Common Pleas. (Def.'s Stmnt. of Facts ¶ 1.) Allstate removed it to this court on April 30, 2009. (Id. ¶ 2.) On May 6, 2009, the court issued a scheduling order referring the case to arbitration. (Docket No. 5.) The order states that "[a]ll motions for summary judgment or partial summary judgment shall be filed and served at least thirty (30) days prior to the arbitration date." (Id. ¶ 4.) The order also states that no discovery will be allowed after the arbitration without leave of court.

(Id. ¶ 2.) On May 12, 2009, the arbitration clerk notified the parties that the date for the arbitration would be September 15, 2009. (Docket No. 6.) Allstate deposed plaintiff on August 3, 2009. (Def.'s Stmnt. of Facts ¶ 20.) Allstate timely filed its motion for partial summary judgment on August 14, 2009. (Docket No. 8.) Plaintiff filed his opposition to the motion on August 26, 2009. (Docket No. 9.) On September 9, 2009, the parties requested and received a cancellation of the arbitration pending resolution of Allstate's motion. (Docket No. 11.)

Plaintiff has not deposed any representatives of Allstate. In his opposition to the motion, plaintiff submitted an affidavit from one of his attorneys, Steven C. Feinstein, that states that Allstate "filed its Motion for Summary Judgment before we had the opportunity to take depositions of any of the Allstate personnel who handled the file." (Feinstein Aff. ¶ 3.)[1] Feinstein states that it is his intention "to take the deposition of at least one person from Allstate." (Id. ¶ 4.) Feinstein states that at such a deposition he would inquire about the following topics: (1) "the carrier's custom and practice of matching materials on undamaged portions of the home in order to place the insured back into the position he was in prior to the loss"; (2) "the reasons that Allstate adjusted the interior damages of Mr. Collins' home in a different manner [than] it adjusted the exterior portion of the home"; (3) whether the adjusters who handled plaintiff's claim participate in a profit-sharing plan that Allstate offers "and how that affected the adjustment of the Collins claim"; and (4) the training that Allstate's adjusters in this case received regarding Allstate's alleged plan in the 1990s "to increase its profitability at the expense of its insured, using various strategies to delay and deny payments . . . and how it affected the adjustment of the Collins claim." (Id. ¶¶ 5-8.)

---

[1] Feinstein does not explain why he did not take advantage of his opportunity to depose an Allstate representative between April 30, 2009, and August 26, 2009.

## II. Standards for Summary Judgment

A motion for summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this initial burden, the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). In evaluating a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A party may file a motion for summary judgment as early as 20 days after suit has been filed. Fed. R. Civ. P. 56. Pursuant to Rule 56(f), however, a court may deny such a motion or order a continuance if the party opposing the motion shows by affidavit that it has a sufficient explanation for an inability to present facts essential to justify its opposition:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

Fed. R. Civ. P. 56(f). The Third Circuit has held that "where relevant information sought is in the hands of the party moving for summary judgment, a district court should grant a Rule 56(f) motion almost as a matter of course unless the information is otherwise available to the non-movant." San Filippo v. Bongiovanni, 30 F.3d 424, 432-33 (3d Cir. 1994) (internal quotation marks and citation omitted). "If discovery is incomplete in any way material to a

pending summary judgment motion, a district court is justified in not granting the motion." Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007).[2]

The party opposing summary judgment based on Rule 56(f) must, however, detail "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Dowling v. City of Philadelphia, 855 F.2d 136, 140 (3d Cir. 1988). "Because a district court has discretion in acting on Rule 56(f) motions, this list of factors is not exhaustive. Instead, it simply offers a guide for the district court to follow in exercising its discretion under Rule 56(f)." Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450, 458 (3d Cir. 2003) (internal quotation marks and citation omitted).

**III.    Discussion**

Allstate argues that the case is ripe for summary judgment because (1) "[m]ore than 20 days have expired since the commencement of the action" and (2) "[t]he record is clear that Plaintiff lacks the evidence to support his claims that Defendant Allstate breached its contract with Plaintiff by failing to provide payment for replacement of the entire roof of the Property or acted in bad faith." (Def.'s Mem. 7.) As to Count I, plaintiff's claim for breach of contract, Allstate claims that plaintiff has not produced "evidence of any sudden and accidental direct physical loss to the roof occurring on or about March 8, 2008 beyond the damage for which Defendant Allstate provided coverage." (Def.'s Mot. 14.) As to Count II, plaintiff's claim for bad faith, Allstate argues that plaintiff "does not meet his burden of proof" because "he does not support the boiler plate averments of his Complaint concerning the bad faith allegations with facts" and because "[t]here is no evidence in the record before this Court that supports these

---

[2] Nevertheless, "whatever its decision, it is improper for a district court to rule on summary judgment without first ruling on a pending Rule 56(f) motion." Id. at 257 (internal quotation marks and citation omitted).

allegations." (Def.'s Mem. at 16.) Allstate argues that "Plaintiff has failed to produce any evidence of willful misconduct or unreasonableness on the [part] of Defendant Allstate in the adjustment of Plaintiff's claim" and that "Plaintiff has failed to produce any evidence that Defendant Allstate treated Plaintiff with reckless indifference and disregard under the circumstances." (Id. at 16, 18.)

In contrast, plaintiff claims that "it is obvious that the record is not complete because Defendant filed its Motion before discovery concluded." (Pl.'s Mem. 11.) Feinstein, plaintiff's attorney, asserts in his affidavit that Allstate "filed its Motion for Summary Judgment before we had the opportunity to take depositions of any of the Allstate personnel who handled the file." (Feinstein Aff. ¶ 3.) Feinstein states that if he were given the opportunity to take depositions of representatives of Allstate he would inquire into: (1) Allstate's custom and practice of ensuring that repairs to damaged portions of a property match undamaged portions "in order to place the insured back into the position he was in prior to the loss"; (2) why Allstate accepted coverage of replacement costs for the interior of the Property to ensure matching but declined such coverage for the exterior; (3) whether and how Allstate's adjustment of plaintiff's claim was affected by the participation of Allstate's representatives in any profit-sharing plan; and (4) whether and how Allstate's adjustment of plaintiff's claim was affected by the training Allstate's representatives might have received regarding an alleged plan by Allstate in the 1990s "to delay and deny payments" to increase Allstate's profitability "at the expense of its insured." (Id. ¶¶ 5-8.)

A. **Count I: Breach of Contract**

As to Count I of his complaint, for breach of contract, plaintiff claims that discovery is not complete with respect to the issue of whether Allstate's repair method "satisfied the terms and conditions of the policy." (Pl.'s Mem. 5.) Plaintiff claims that depositions of representatives

of Allstate would help with the determination of whether Allstate "should have paid for replacement of Plaintiff's entire roof whether the matching issue is viewed as an obligation or as an internal practice, standard or custom." (Id. at 10.) I find that plaintiff has not demonstrated a need for such additional discovery because plaintiff already submitted evidence as to these issues. Plaintiff submitted an affidavit from Wagner in which the witness states that both Allstate and the industry "pay for areas that are not damaged" in order "to match continuous decorations." (Wagner Aff. ¶¶ 15-17.) Given this record, depositions of representatives of Allstate are not necessary for the purposes of summary judgment as to these issues.

Allstate argues that it is entitled to summary judgment based on Greene v. United Services Auto. Ass'n, 936 A.2d 1178 (Pa. Super. Ct. 2007). In Greene, the Pennsylvania Superior Court ruled that an insurance company was only required to replace the one damaged slope of a multi-sloped slate roof.[3] Id. at 1186. The homeowners argued, among other things, that the policy in question required replacement with shingles of "like construction" and that "because the damaged shingles on their home were no longer in production, like construction meant an entirely new roof, not a roof with mismatched shingles." Id. at 1185. The court found that although the exact model of the damaged shingles was no longer in production, testimony at trial revealed that shingles of similar color, texture, function, and shape were, in fact, available, and that the use of such similar shingles met the parameters of "like construction" called for by the policy language. Id. at 1186.

---

[3] The court in Greene found that it would not have been unreasonable to consider the entire damaged slope, not merely the damaged shingles, to be the "part of the building damaged" under the terms of the policy in that case. Id. The court felt that the homeowners in Greene were nevertheless overreaching when they sought costs for replacement of all of the undamaged slopes of the multi-sloped roof to match the one repaired slope. Id. The parties in this case have not pointed to any evidence to establish whether or not plaintiff's roof is similarly multi-sloped.

Here, in contrast to Greene, the Wagner affidavit states that "there are no slate tiles currently available on the market that are sufficiently similar in color, size and texture, to those on the Collins home at the time of the loss so as to make them of 'like kind and quality' or 'equivalent construction' as required under the terms and conditions of the policy." (Wagner Aff. ¶ 12.) Wagner states that repairing only the damaged portion of the roof would therefore "result in a different appearance on the roof than the one that . . . existed prior to the time of the loss and would not place the Collins' back into the position they were in prior to the time of the loss." (Id. ¶ 14.) The Wagner affidavit thereby raises genuine issues of material fact sufficient to defeat Allstate's motion for summary judgment as to Count I. See Metz v. Travelers Fire Ins. Co., Hartford, Conn., 49 A.2d 711, 713 (Pa. 1946) (trial court did not err when it did not confine plaintiff's recovery to the amount it would have cost to repair collapsed portions of roof with material "of the same kind and quality" because there was trial testimony that it was impossible to obtain such material).[4]

### B. Count II: Bad Faith

Unlike Count I, plaintiff has demonstrated a need for additional discovery as to Count II. Plaintiff has difficulty, however, explaining why he has not already completed such discovery. Plaintiff appears to have waited until Allstate filed a motion for partial summary judgment before

---

[4] Allstate has also cited several decisions (which employ language different from the Policy here or are otherwise based on different facts) that are from other jurisdictions and are therefore not binding on this court. It is worth noting, in any event, that cases in other jurisdictions on the subject of "matching" undamaged areas of a property to damaged areas are mixed. See, e.g., Thomas v. American Family Mut. Ins. Co., 666 P.2d 676, 680 (Kan. 1983) (trial court did not err in refusing to give jury instruction about reasonable substitution of materials to meet "like kind and quality" language of policy, even though identical materials were allegedly not available; insurance company had received ample opportunity at trial to argue the reasonableness of replacing the undamaged slope of a two-sloped roof to match the adjacent damaged slope).

he attempted to take any depositions of representatives of Allstate. Plaintiff has not submitted evidence that he issued any notices for such depositions before that time. Meanwhile, the court's scheduling order required any motion for summary judgment or partial summary judgment to be filed 30 days before the arbitration hearing, which had been scheduled for September 15, 2009. Allstate timely filed its motion for partial summary judgment on August 14, 2009 – 32 days before the date of the arbitration.

Plaintiff is correct, however, that discovery was technically still open at that time. Although plaintiff's delay in seeking depositions of Allstate's representatives is very troubling,[5] "it is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery,'" especially when, as here, relevant facts are within the control of the moving party. Abington Friends, 480 F.3d at 257 (quoting Dowling, 855 F.2d at 139). "If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion." Id. (citing Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 845-46 (3d Cir. 1992)).

Given the fact-specific inquiries required in examining plaintiff's claims under the Policy and the short period of time for discovery in arbitration matters, I find – without addressing the merits of plaintiff's bad faith claim – that the Feinstein affidavit provides a sufficient basis to permit the additional discovery plaintiff seeks. The lines of inquiry Feinstein has identified may yield evidence to support plaintiff's argument that Allstate was acting bad faith when it declined coverage of the replacement of the entirety of plaintiff's roof. This is therefore not a situation where plaintiff's request under Rule 56(f) "is based on speculation or raises merely colorable

---

[5] Plaintiff could, of course, have prevented the necessity of this entire exercise by filing, before the deadline for filing motions for summary judgment, a motion to extend the time for discovery and to postpone the arbitration hearing.

claims . . . ." City of Rome v. Glanton, 958 F.Supp. 1026, 1039 (E.D. Pa. 1997), aff'd, 133 F.3d 909 (3d Cir. 1997). I will not, however, permit such additional discovery to be unlimited. Plaintiff will have 45 days to take the depositions he seeks. If, after that time, plaintiff still desires to pursue his claim for bad faith, Allstate may renew its motion for partial summary judgment.

**IV.     Conclusion**

Plaintiff has raised genuine issues of material fact with regard to Count I of his complaint, for breach of an insurance contract. I will therefore deny Allstate's motion as to Count I. Plaintiff has also established by affidavit, pursuant to Rule 56(f), that he is justified in requesting additional discovery as to Count II of his complaint, for bad faith. I will therefore deny Allstate's motion as to Count II without prejudice to Allstate's right to renew the motion after the parties complete discovery.